**UNITED STATES v. HILL et al.**

No. 12261.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1948.

A. W. Christian, Asst. U. S. Atty. and Frank B. Potter, U. S. Atty., both of Ft. Worth, Tex., for appellant.

Raymond W. Richards, of Amarillo, Tex., for appellees.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The appellee, Mrs. Hill, was the owner and driver of an automobile in which appellees Mercure and Ford were also riding when the automobile was run into and practically destroyed and its occupants all injured by an army truck of the United States driven by a soldier in the scope of his duties, but negligently, as a result of which in a single suit several judgments against the United States were recovered by these appellees for the damages they

had each suffered less the sums paid to them by appellee State Farm Insurance Company, which Company also recovered a judgment against the United States for the total amount it had thus paid. The collision occurred in Texas and the suit was under the Tort Claims Act, Part 1 of Title IV of the Legislative Reorganization Act of 1946, 60 Stat. page 842,[1] and was tried to the judge without a jury. The United States, appealing, attacks only the judgment obtained by the Insurance Company, asserting that the Tort Claims Act gives the Insurance Company no actionable claim as subrogee, and that the Anti-Assignment Act, 31 U.S.C.A. § 203, forbids such a judgment. The question was duly raised by motion to dismiss the Insurance Company's claim and by exception to the court's conclusion of law that the Company as subrogee under the terms of its policy and according to the usages of equity was entitled to recover judgment against the United States.

The policy was an automobile policy of indemnity insurance with coverage for collision damage to the automobile and for medical, hospital, and nursing service within a maximum limit of $500 per person growing out of injuries sustained by occupants in a collision of the automobile. It provided, "In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights." The accident occurred March 5, 1946. The Insurance Company paid to the several occupants a total of $2,254.25, for which it was given judgment. It does not appear when it made the payments, nor whether any "instruments and papers" were executed to it. The several payments were deducted from the damages which each injured individual would have been entitled to recover had there been no insurance, and each obtained judgment for the difference. The United States was subjected to four claims and judgments instead of three.

The Tort Claims Act, Sec. 410 (a),[2] in broad terms gives the District Court, sitting without a jury, "Exclusive jurisdiction to hear, determine and render judgment on any claim against the United States, for money only, accruing after January 1, 1945, on account of damage to or loss of property, or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment or for punitive damages." It is not doubted that this Insurance Company, if the United States were not the defendant, would under the law of Texas be entitled to a judgment such as has been rendered here. The words quoted from the Tort Claims Act are therefore broad enough to include this Insurance Company as a claimant by way of partial subrogation, if this Act alone be considered. The joinder in one suit of all these claims, and the trial of them together, and the disposing of them in one judgment would be proper under the Federal Rules of Civil Procedure, 28 U.S.C.A., though not required. But the Tort Claims Act makes no express provision for claims arising by subrogation or other kind of transfer and says nothing that would constitute a repeal or modification by implication of the Anti-Assignment Act or infringe its ancient policy. The Anti-Assignment Act is still law and must be taken into account. Its

[1] 1948 Judicial Code, 28 U.S.C.A. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680.

[2] 1948 Judicial Code, 28 U.S.C.A. §§ 1346, 2411, 2674.

presently pertinent provisions, 31 U.S.C.A. § 203, are:

"*All transfers* and assignments made of *any claim* upon the United States, or of *any part* or share thereof, *or interest therein,* whether absolute or conditional, and *whatever* may be *the consideration* therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim or of any part or share thereof, except as provided in section 204 of this title, *shall be absolutely null and void,* unless they are freely made and executed in the presence of at least two attesting witnesses, *after the allowance of such a claim,* the *ascertainment* of the amount due, and the issuing of a warrant for the payment thereof." (Emphasis added.)

The evident purpose is to protect the ascertainment and allowance of claims, in and out of court, against the splitting of them, against the multiplication of claimants, and against the complexities and uncertainties that might arise from disputes among the original claimant and those claiming under him. This aim of the Act and its application have often been discussed by the Supreme Court. In National Bank of Commerce of Seattle, Oregon v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, the court reviewed and interpreted the previous cases, including Spofford v. Kirk, 97 U.S. 484, 24 L.Ed. 1032, and Erwin v. United States, 97 U.S. 392, 24 L.Ed. 1065, and drew the distinction between transfers by operation of law and voluntary transfers. From the Erwin case the court quoted: "It applies only to cases of voluntary assignment of demands against the government. It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees, or assignees in bankruptcy, is not within the evil at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the court of claims." And from the Spofford case this was quoted: "It would seem impossible to use language more comprehensive than this. It embraces alike legal and equitable assignments. * * * It strikes at every derivative interest in whatever form acquired, and incapacitates every claimant upon the government from creating an interest in the claim other than in himself." In Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 874, 29 L.Ed. 940, it was said of the provisions of the statute, "They were passed in order that the government might not be harassed by multiplying the number of persons with whom it had to deal, and might always know with whom it was dealing until the contract was completed and a settlement made." So again in Martin v. National Surety Co., 300 U.S. 588, 594, 57 S.Ct. 531, 534, 81 L.Ed. 822, the court said, "In the absence of such a rule, the Government would be in danger of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability." There is no decision of the Supreme Court on the exact question here presented, whether the acquisition of a claim against the United States, or an interest in it, by subrogation on paying insurance touching the transaction which gave rise to the claim, is a transfer by operation of law and so not within the statute, or is by act of the parties and invalidated by it. Conflicting views have been expressed by the lower courts. Without reviewing them we will state our conclusion.

When on March 5, 1946, this accident happened, the claim against the United States of each of the three persons injured straightway came into existence. The Insurance Company then had no claim against the United States and no interest in any. It asserts it got an interest in Mrs. Hill's claim and in the claims of Mercure and Ford by afterwards paying to each money by virtue of the policy, which payment each accepted. The policy said an interest should thereupon pass and that instruments to that effect should be executed. If they were executed they were plainly assignments by the claimants and void as against the United States. If no formal assignments were made, and the equity of subrogation alone is relied on as equivalent to assignments, the change of ownership is still by the voluntary acts of the parties; and the results as respects complication, multiplication of claimants,

and the danger of disputes among the claimants is the same. The case falls equally within the evils aimed at by the statute. It is true that no dispute among claimants has arisen in this case, but in construing the statute the possibilities in other circumstances must be considered. Mrs. Hill might have had several insurers and insurances, as automobile, accident, hospital, workmen's compensation, each of which was settled according to the obligation of the contracts for which she had paid premiums. The other injured persons might have had their own insurance also. Insurance liability is not always or usually the same in its elements as tort liability, and insurers might easily have disputes as to what elements of the tort liability each was subrogated to. An insurer's subrogation necessarily depends on his contract, on what loss he insured against. An insurer against damage to an automobile only should get by subrogation no interest in a claim for a personal injury, though both arose from the same occurrence. Again if transfer by subrogation of claims against the United States is to be recognized, the insurer and insured might each sue separately, requiring two suits to be defended. A question might arise even in the present case whether set-offs which the United States may have against the original claimants apply also to the judgment in favor of the Insurance Company. An insurer might even seek administrative adjustment for less than $1,000, while the injured person might sue in court. The statute if properly applied will protect the Government from all collateral questions. That this protection should be afforded has been earnestly contended in this case. We cannot regard the Anti-Assignment Act as a technicality, nor that the Rules of Civil Procedure have or can set it aside. It is a peculiar and substantial incident attached specially to all claims against the Government whether adjusted in or out of court, and has a serious public purpose. The Rules of Civil Procedure by their general provisions for all claims presented in the district court against any person have neither the intention nor the effect of setting aside this Act. Rule 13(d) expressly says counterclaims against the United States are not affected.

■ In Chicago, St. L. & N. O. R. R. Co. v. Pullman Southern Car Co., 139 U. S. 79, 11 S.Ct. 490, 35 L.Ed. 97, the relation of insurance and its payment to the claim of the insured against the person liable for the loss insured against was considered, and it was held they had no effect on the claim, but were res inter alios actae, and irrelevant to the trial of it. This also is the law of Texas, 13 Texas Jurisprudence, Damages, Sec. 81; and the general law, 25 C.J.S., Damages, § 99. The court there recognized the insurer's right under the terms of the policy and by the ordinary application of subrogation to have indemnity from the insured, but in the instant case because of the Anti-Assignment Act subrogation cannot work against the United States, the Government is entitled to an ascertainment of its liabilities unembarrassed by the existence or consequences of the insurance. We express no opinion as to the effect of the Act, if any, upon the equitable rights of the plaintiffs among themselves, nor as to the forum proper for their ascertainment.[3] The court should have rendered several judgments against the United States for the full damages inflicted on each person injured, Mrs. Hill, Mercure and Ford, ignoring the claim asserted by State Farm Insurance Company.

The judgments appealed from are set aside and the cause remanded with direction to enter judgments in accordance with this opinion.

---

[3] In Doleman v. Levine, 295 U.S. 221, at page 225, 55 S.Ct. 741, 79 L.Ed. 1402, the indemnitor's right of subrogation to the indemnitee's right against the wrongdoer (not the United States) was again examined and it was held that where the indemnitor had a right to only *a part* of the recovery he could not sue in his own name and thus split the cause of action. "He is in the position of *a partial assignee* of the chose in action, and as such is entitled to his *share of the proceeds of the action when recovered,*" by a resort to equity. That case further illustrates the contentions that may be introduced by recognizing a subrogee.

HUTCHESON, Circuit Judge (dissenting).

Although the United States complained of the judgment only in so far as it awards recovery to the insurance carrier, State Farm Insurance Company, as subrogee, the opinion of the majority, on what I regard as a mere technicality, reverses the whole judgment. Swallowing whole and with no apparent difficulty the camel of the Government's liability under the Tort Claims Act for the full amount of the damages, the opinion strains at the gnat of the Anti-Assignment Act. The result is to place form above substance by ordering a reversal not because the judgment awards more money against the United States than is due by it but because the judgment in one play awarded the money directly to the persons entitled to it instead of by double play from the United States to Mrs. Hill of the whole and from Mrs. Hill to the Insurance Company of the part of the recovery to which it is entitled.

I know the purpose of the new Rules of Federal Procedure was, I thought their effect had been, to do away with such formal shadow boxing by coming at once to grips with substance. Whatever force there might be in the position of the majority under the Anti-Assignment Act, if all interested parties had not appeared in court as plaintiffs, and I do not think there is any for they could all have been brought in,[4] there could be none here since all were present and the rights of the government were fully protected in the one suit and judgment. In deciding in this case that the Anti-Assignment Act has application, the majority has not only gone counter to the view of every circuit court of appeals which has considered the question,[5] but has gone counter to *the concession of the Government made in Yorkshire Ins. Co. v. United States, (note 4, supra) that the Anti-Assignment Act does not preclude the suit.*

I think the case was well decided below. I am in full agreement with the excellent opinion of the district judge and would affirm the judgment on that opinion. I Dissent from its reversal.

---

[4] Cf. Yorkshire Ins. Co. v. U. S., 3 Cir., Nov. 5, 1948.

[5] Old Colony Ins. Co. v. United States, 6 Cir., 168 F.2d 931; Employers Fire Ins. Co. v. United States, 9 Cir., 167 F.2d 655; Aetna Cas. & Sur. Co. v. United States, 2 Cir., 170 F.2d 469.