**TERMINAL R. ASS'N OF ST. LOUIS v. UNITED STATES.**

No. 14068.

United States Court of Appeals Eighth Circuit.

April 27, 1950.

Rehearing Denied May 22, 1950.

William A. Thie, St. Louis, Mo. (Arnot L. Sheppard, St. Louis, Mo., was with him on the brief), for appellant.

Paul A. Sweeney, Attorney, Department of Justice, Washington, D. C. (H. G. Morison, Assistant Attorney General, Drake Watson, United States Attorney, St. Louis, Mo., and Massillon M. Heuser and Richard P. Williams, III, Attorneys, Department of Justice, Washington, D. C., were with him on the brief), for appellee.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The appellant, on April 2, 1948, was compelled to pay $40,000 in settlement of a judgment which one of its former switchmen had recovered against it in an action for personal injuries sustained by him on June 10, 1943, as the result of the negligence of employees of the United States in charge of the St. Louis Ordnance Plant in St. Louis, Missouri. The appellant, on February 16, 1949, brought this action to recover indemnity or reimbursement from the Government, in reliance upon the Federal

Tort Claims Act of August 2, 1946.[1] The District Court, on motion of the Government, dismissed the action, and this appeal followed.

The question for decision is whether the appellant's claim is within the coverage of the Federal Tort Claims Act, which, so far as pertinent, gave to the District Courts "exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred." [2]

The facts alleged in the complaint are substantially as follows: On June 10, 1943, Cornelius W. Fitzjohn was in the general employ of the appellant, but in the special employ of the Government, and engaged in the switching of railroad cars within the St. Louis Ordnance Plant. The tracks, motive power, loading docks, and lights, within the plant, were owned and exclusively controlled by the Government through its military forces, acting in line of duty. In the performance of his duties within the plant, Fitzjohn was under the control of the Government. The employees of the Government negligently caused vertical iron pipes, used as light standards, to be placed along the west side of a loading dock, within the plant, in such close proximity to an adjacent track as to prevent a man riding on the side of a freight car from passing in safety. Fitzjohn, while in the performance of the work assigned him by the Government, was knocked from the side of a moving freight car by one of the light standards and was injured. On May 9, 1945, he brought an action against the appellant, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover for his injuries. The appellant notified the Government of the action and demanded that it assume the defense and pay any judgment that might be recovered. This the Government refused to do. On October 9, 1946, Fitzjohn recovered a judgment against the appellant for $47,500 upon the ground that the place where he was working at the time of the accident was unsafe because of the light standards being too close to the railroad track within the plant. An appeal was taken from the judgment, and this Court affirmed on January 7, 1948, and denied a petition for rehearing on February 17, 1948. 165 F.2d 473. A sixty-day stay of mandate was granted to enable the appellant to apply for certiorari to the Supreme Court. Fitzjohn offered to accept $40,000 in settlement of his judgment, and the appellant paid him that amount on April 2, 1948. The negligence of the employees of the Government in charge of the Ordnance Plant at the time Fitzjohn was hurt was the sole proximate cause of his injuries and resulted in the appellant's having to bear the expense of resisting and of eventually satisfying his claim and judgment. In addition to the $40,000 paid to Fitzjohn on April 2, 1948, the appellant expended $2,292.28 as costs of litigation. Its total expenditures resulting from the injuries to Fitzjohn were $42,292.28, for which it now seeks reimbursement from the Government.

The appellant argues: That, since recovery may be had in an action for common-law indemnity against a private individual in Missouri, such an action may be maintained against the United States under the Federal Tort Claims Act. That the injuries for which Fitzjohn recovered a judgment against the appellant were due to the negligence of employees of the Government acting within the scope of their employment. That the payment of the money judgment, for which reimbursement is

---

1. 60 Stat. 842, as amended 61 Stat. 722, formerly codified as 28 U.S.C.A. § 931 et seq. The new Judicial Code became effective on Sept. 1, 1948, and the provisions formerly embodied in the Torts Claims Act are now distributed through various chapters of the new Code.

2. Formerly 28 U.S.C. § 931(a); now, with immaterial changes, 28 U.S.C.A. § 1346 (b). See, also, 28 U.S.C.A. § 2674.

sought, was "damage to or loss of property." That the appellant's claim for indemnity did not accrue until April 2, 1948, when the appellant paid the Fitzjohn judgment. That the liability of a principal tort-feasor to an indemnitee is not affected by the former's nonliability to the injured party.

The Government asserts: That the Federal Tort Claims Act did not confer jurisdiction on the District Courts of cases arising out of torts which occurred prior to January 1, 1945. That if the appellant's claim is based on subrogation, it is barred, since Fitzjohn did not, at any time, have a legal claim against the United States. That the Government has consented to be sued upon claims for common-law torts only, and has not consented to be sued for common-law claims for indemnity which arise out of contracts implied in law. That the appellant has not stated a claim for common-law indemnity, since the United States was never liable to Fitzjohn and therefore has not been unjustly enriched by the appellant's payment of Fitzjohn's claim.

We have no doubt that the appellant's claim for indemnity accrued on April 2, 1948, when the appellant settled with Fitzjohn, and that, under the law of Missouri, the United States, if a private person, would have been liable to the appellant for indemnity under the circumstances outlined in the complaint. Busch & Latta Paint Co. v. Woermann Construction Co., 310 Mo. 419, 276 S.W. 614, 619; State ex rel. Algiere v. Russell, Mo.Sup., 223 S.W.2d 481; New Amsterdam Casualty Co. v. Boaz-Kiel Construction Co., 8 Cir., 115 F.2d 950, 951. See also, American District Telegraph Co. v. Kittleson, 8 Cir., 179 F.2d 946, 952.

In a situation such as that here presented, the common law implies an agreement or imposes an obligation on the principal wrongdoer to reimburse the person secondarily liable for what the latter has been compelled to pay. George's Radio, Inc., v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219, 222; American District Telegraph Co. v. Kittleson, supra, page 951 of 179 F.2d.

We are not concerned here with the merits of the appellant's claim for indemnity, but only with the question of the jurisdiction of the District Court, under the Federal Tort Claims Act, to enforce the claim.

It is obvious that the United States was not under a legal obligation to Fitzjohn for the wrong done him by its employees in 1943, since at that time the Government had not consented to be sued upon tort claims. In The Western Maid, 257 U.S. 419, 433, 42 S.Ct. 159, 161, 66 L.Ed. 299, the Supreme Court said:

"The United States has not consented to be sued for torts, and therefore it cannot be said that in a legal sense the United States has been guilty of a tort. For a tort is a tort in a legal sense only because the law has made it so. * * *

"* * * Legal obligations that exist but cannot be enforced are ghosts that are seen in the law but that are elusive to the grasp."

The claim of Fitzjohn as against the Government, from its inception, was "ethical only." The Western Maid, supra, page 434 of 257 U.S., page 161 of 42 S.Ct. See and compare, Oahu Railway & Land Co. v. United States, D.C.Hawaii, 73 F.Supp. 707, 709. We think that the claim of the appellant for indemnity cannot logically be held to have risen above its source or to be anything more than an ethical claim against the Government. The appellant, in satisfying the judgment of Fitzjohn, discharged no obligation legally owing from the Government to Fitzjohn or to the appellant. It is therefore our opinion that the claim of the appellant for indemnity is not enforceable in the District Court under the Federal Tort Claims Act. The opinion of the Supreme Court in United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, does not expressly or inferentially support the appellant's contention that the District Courts have jurisdiction of such claims.

We are also of the opinion that the Act reasonably may not be construed to

cover claims based on torts committed prior to January 1, 1945. Oahu Railway & Land Co. v. United States, supra, pages 708–709 of 73 F.Supp.; Ryan Stevedoring Co., Inc. v. United States, 2 Cir., 175 F.2d 490, 494.

The dismissal of the appellant's action should have been for want of jurisdiction. The judgment will be so amended, and as amended will stand affirmed.

WOODROUGH, Circuit Judge (dissenting).

The plaintiff was compelled to pay a claim for damages for personal injury to one of its switchmen caused by the negligence of government employees in the operation of plaintiff's railroad property then in government possession, and it brought this action against the United States under the Federal Tort Claims Act to recover the amount of its payment and expenses as indemnity which plaintiff would have been entitled to sue for and recover under the law of the state where the accident occurred if its loss had been caused by the negligence of a private party. The negligence and injury occurred prior to the effective date of the Federal Tort Claims Act but the plaintiff was not required to and did not make payment of the damages and its claim for indemnity did not accrue until after that date. It seems to me that it should be held that the Federal Tort Claims Act withdrew the government's immunity and conferred jurisdiction of the action.

The plaintiff is the innocent party who has in fact suffered the loss resulting from negligence of government employees and on the face of this record it has a just claim against the government that ought to be considered either by a court or by Congress. It seems to me that it was the intent of the Act to relegate it to the court and to permit the plaintiff as the party who actually and in fact suffered the loss to sue the government for it. Also that the date of the occurrence of the negligence and injury is irrelevant and the date of the accrual of the claim to the plaintiff who suffered the loss brings it within the Act.

It seems to me that the Supreme Court's declarations as to the purpose and effect of the Act in the subrogation cases (United States v. Aetna Surety Co., 338 U.S. 366, 70 S.Ct. 207) justify and sustain the jurisdiction in this suit against the government by this indemnitee. The claims of subrogees and indemnitees are alike derivative but it is apparent from the Supreme Court's opinion that it found nothing in the mere fact of subrogee claims being derivative to even merit discussion. Its concern as to the subrogees' right to sue the government on the claims before the court was whether the claims had been derived within the intendment of R.S. § 3477, 31 U.S.C.A. § 203. On concluding that the subrogees' claims accrued to them by operation of law and were not within R.S. § 3477, the court found nothing in the Act to prevent the subrogees from maintaining their suits under it. There are no express words in the Act relative to derivative claims but the court made its declaration of the intendment and purpose of the Act with the derivative character of the subrogees' claims directly before it. It said, 338 U.S. page 370, 70 S.Ct. page 210, that "the language of the Act indicates a congressional purpose that the United States be treated as if it were a * * * person in respect of torts committed by its employees" (with exceptions not relevant) and that understanding of the meaning and purport of the Act led the court to declare that "the Government must defend suits by subrogees as if it were a private person." The same interpretation of the Act necessitates the same declaration as to suits by indemnitees who have become by operation of the law of the state of the occurrence of the negligence and injury the sole parties interested in and vested with a claim in respect of the torts committed by the government's employees. I see no reason to discriminate between subrogees and indemnitees in applying the Act and I think there is none. They are alike innocent bystanders upon whom loss from tortious conduct has ricocheted and by operation of law they both have claims against the tort feasor. The steps of reasoning by which their status in law has come about is immaterial. In good conscience the tort feasor ought to repay them and the law says he must.

The subrogation cases apparently did not include any where the government employee's tort antedated the date of January 1, 1945, fixed in the Act and the subrogee's right accrued and was sued on after that date. But if "the government must be treated as if it were a private person in respect of the torts committed by its employees" and must defend suits by indemnitees as if it were a private person, then the date when the claim accrued to the indemnitee must settle whether or not there is jurisdiction. The claim here involved accrued to the plaintiff on April 2, 1948, and at that time the government had no immunity from the suit and the District Court was vested with jurisdiction over it.