GAJARSA, Circuit Judge,
concurring-in-part and dissenting-in-part.
Two statutory provisions, 41 U.S.C. § 15 (the “Contracts Act”) and 31 U.S.C. § 3727 (the “Claims Act”), generally restrict assignments of contracts and claims against *1366 the Government. Tuftco Corp. v. United States, 222 Ct.Cl. 277, 614 F.2d 740, 744 (1980). I agree with my colleagues that the Nuclear Waste Policy Act of 1982 (“NWPA”) and the Standard Contract waive the restrictions of the Contracts Act. But because I conclude that the restrictions of the Claims Act were not waived, I respectfully dissent from Part I of the majority opinion.[1]
I.
Congress first restricted the assignment of claims against the United States in 1846. See An Act in Relation to the Payment of Claims, ch. 66, 9 Stat. 41 (1846). Initially of narrow scope, the restriction was subsequently extended to “all claims against the United States, whether allowed by special acts of Congress, or arising under general laws or treaties, or in any other manner whatever” following a series of fraudulent claims associated with the Mexican War. An Act to Prevent Frauds upon the Treasury of the United States, ch. 81, § 7, 10 Stat. 170, 171 (1853); see also H.R. Rep. 32-1 (1852). In doing so, Congress decreed
That all transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest therein ... shall be absolutely null and void, unless the same shall be freely made and executed ... after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.
10 Stat. at 170 (emphasis added). In its current form, the Claims Act provides, in relevant part, that
An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant ... and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official ... and the official shall certify the assignment.
31 U.S.C. § 3727(b) (emphasis added). Thus, while the specifics of this provision have been amended over the years, the requirement that an assignment be made only after allowance and ascertainment remains. See Fireman’s Fund Ins. Co. v. England, 313 F.3d 1344, 1349 (Fed.Cir.2002).
Despite the facially strict language of the Claims Act, the Supreme Court created an exception for transfers by operation of law. See United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 375-76, 70 S.Ct. 207, 94 L.Ed. 171 (1949). This exception grew out of the Court’s decision in Erwin v. United States, which held that “[t]he passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which the statute aimed,” and therefore a claim against the United States could be transferred to the trustee of a bankrupt’s estate. 97 U.S. 392, 397, 24 L.Ed. 1065 (1878).
In contrast to transfers by operation of law, the Supreme Court has generally held that the Claims Act precludes voluntary assignments. E.g., United States v. Dow, 357 U.S. 17, 20, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958); United States v. Shannon, 342 U.S. 288, 292, 72 S.Ct. 281, 96 L.Ed. *1367 321 (1952); Spofford v. Kirk, 97 U.S. 484, 489, 24 L.Ed. 1032 (1878); see also Aetna Cas., 338 U.S at 375, 70 S.Ct. 207 (“[T]he Court has always stated the flat exception of all transfers by operation of law, as distinguished from voluntary transfers.”). Indeed, the Court has recognized as exceptions to the broad sweep of the statute only two types of voluntary assignments: “transfers by will” and “general assignments for the benefit of creditors.” Shannon, 342 U.S. at 292, 72 S.Ct. 281.
II.
Here, the claim was voluntarily assigned, but it was neither ascertained nor allowed at the time of assignment. The assignment was therefore contrary to the requirements of the Claims Act. It does not fall within either of the recognized exceptions, and it clearly implicates the mischief that the Claims Act was intended to avoid: namely, forcing the United States to deal with multiple parties, including strangers to the original transaction, and the attendant litigation surrounding the assignment itself.[2],[3] See, e.g., Shannon, 342 U.S. at 291-92, 72 S.Ct. 281 (one purpose was “to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant”). In my judgment, the assignment to Dominion was thus precluded by the Claims Act.
Nevertheless, because the Claims Act is for the protection of the United States, the United States may waive it. Delmarva Power & Light Co. v. United States, 542 F.3d 889, 893-94 (Fed.Cir.2008). In this case, the majority finds waiver via the language of 42 U.S.C. § 10222 and the Standard Contract. Majority Op. at 1362-63.
The NWPA provides:
The rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved.
42 U.S.C. § 10222(b)(3) (emphasis added). Similarly, the Standard Contract provides:
The rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer.
10 C.F.R. § 961.11 at Art. XIV (emphasis added). Clearly, this language supports a conclusion that something may be assigned. In the majority’s opinion, the phrase “rights and duties” supports an expansive waiver of both the Contracts Act and the Claims Act. In support of its holding, the majority cites only to a single sentence in the Restatement (Second) of Contracts: “[t]he injured party has a right to damages for any breach by a party against whom the contract is enforceable .... ” Majority Op. at 1363.
While I agree that claims resulting from a breach of contract can be conceptualized as a “right” under the contract, I am unwilling to interpret broadly that provision *1368 of the NWPA given Congress’s history of explicitly waiving the Claims Act when it desires to do so. For example, Congress has said:
Hereafter the provisions of section thirty-four hundred and seventy-seven of the Revised Statutes shall not apply to payments for rent of post-office quarters made by postmasters to duly authorized agents of the lessors.
Act of May 27, 1908, ch. 206, 35 Stat. 406, 411 (referencing prior codification). And:
Notwithstanding the provision of section 3727 of Title 31, the Secretary is authorized to recognize validly executed assignments made by Regional Corporations of their rights to receive payments from the Alaska Native Fund.
43 U.S.C. § 1628(a); see also 25 U.S.C. § 1725(d)(2); 22 U.S.C. § 4060(a)(2). Indeed, the Claims Act itself excepts certain types of assignments. 31 U.S.C. § 3727(c). Particularly in light of this history, I believe the majority fails to give even short shrift to the general rule that statutes should be interpreted so as to avoid one statute repealing or overriding another. See Sec. Indus. Ass’n v. Bd. of Governors of Fed. Res. Sys., 468 U.S. 137, 176, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984).
My reticence is reinforced by the strong disfavor shown voluntary assignments of claims. E.g., Dow, 357 U.S. at 20, 78 S.Ct. 1039; Shannon, 342 U.S. at 292-93, 72 S.Ct. 281. And the Restatement itself— the only source cited by the majority in support — appears to draw a distinction between rights under a contract and a claim for breach, with the latter being based on the former, but one step removed. Restatement (Second) of Contracts § 236 (“A claim for damages for partial breach is one for damages based on only part of the injured party’s remaining rights.... ”). I therefore conclude that the use of the phrase “rights and duties” in the NWPA and Standard Contract refers only to the immediate rights and duties associated with the contract itself, not an unascer-tained monetary claim for breach that is one-step removed from the statutory “rights and duties” provision. I would thus find waiver of the Contracts Act, 41 U.S.C. § 15, but not the Claims Act, 31 U.S.C. § 3727.

. The majority also holds that the United States cannot seek an offset for any benefit to Dominion from the delay in paying the onetime fee. Majority Op. at 1364-65. Because I would find that Northeast Utilities’ assignment of unascertained claims is barred by the Claims Act, I join Part II of the Majority Opinion only to the extent the claims in question accrued after the contracts were assigned to Dominion. I concur fully, however, in the majority’s reasoning on the issue of offset.

. The majority insists that "these policy arguments do not trump the plain language of the statute.” Majority Op. at 1363. In doing so, the majority misses the point. Here, the language in the NWPA is not unambiguous. I believe that, where such ambiguity exists, the policies promoted by the Claims Act are relevant to our determination of whether the "plain language” in question is sufficient to support a waiver.

. The United States identified specific deficiencies in its ability to discover information from Northeast Utilities that were directly relevant to the claim at issue. Appellant Br. at 20-21. It is not enough to say that the United States could have resolved these issues by joining Northeast Utilities as an involuntary plaintiff; that argument was soundly rejected in Shannon, 342 U.S. at 294, 72 S.Ct. 281.