**Marvin DUDLEY et al., Plaintiffs-Appellees,**

v.

**Gilbert P. SMITH, Defendant-Appellant.**

No. 73-3624.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1974.

Rehearing and Rehearing En Banc Denied Jan. 23, 1975.

Chase R. Laurendine, Ray G. Riley, Jr., Mobile, Ala., for defendant-appellant.

G. Hamp Uzzelle, III, Mobile, Ala., for plaintiffs-appellees.

Before WISDOM and BELL, Circuit Judges, and BREWSTER, District Judge.

BELL, Circuit Judge:

This appeal involves a diversity action against appellant, Gilbert Smith, to enforce a 1971 judgment rendered in appellee's favor against Smith's closely-held corporation, Bayou Fabricators Co., Inc.[1] The prior suit arose when a shrimp boat that appellee had purchased from Bayou was partially destroyed by fire. Appellee recovered a judgment against Bayou for $16,996.66 plus interest, but was subsequently unable to collect the judgment because of Bayou's insolvency.

Appellee then filed the present action against appellant seeking recovery for the 1971 Bayou judgment based upon the allegation that "there existed such a unity of interest and ownership" between appellant and Bayou that the former was the alter ego of the latter. In his amended complaint, appellee alternatively argued that payments made to appellant after Bayou had become insolvent and after appellee had become Bayou's judgment creditor were illegal preferences, portions of which appellee was entitled to recover from appellant.

The district court submitted two special interrogatories to the jury pursuant to Rule 49(a) of the Federal Rules of Civil Procedure. One asked the jury to decide whether appellant was Bayou's alter ego. The other queried whether monies paid by appellant to Bayou from 1966 to 1971, other than an initial contribution to capital, were loans.[2] The jury answered both questions in the affirmative.

Armed with these findings, the district court entered judgment for the appellee based upon the legal conclusions that appellant, as Bayou's alter ego, was liable on the 1971 judgment, and that the post-insolvency monetary transfers to appellant constituted repayments of loans and were, therefore, illegal preferences. Appellant's total liability on both portions of the judgment was not to exceed the amount of the 1971 judgment against Bayou, plus interest.

On appeal, the parties agree that if the district court's judgment is to be affirmed by upholding the alter ego theory of recovery, review of the preference issue becomes unnecessary. We concur in this view and affirm the district court

1. Dudley v. Bayou Fabricators, Inc., S.D. Ala., 1971, 330 F.Supp. 788.

2. From 1966 to 1971, appellant's total investment in Bayou was $251,514.30, $50,000 of which was an initial contribution to capital.

judgment against appellant based upon his alter ego relationship with Bayou.

A preliminary contention of appellant which must be disposed of is that the district court lacked in personam jurisdiction under Alabama's long arm statute, Code of Alabama, Title 7, Section 199(1). Although Bayou was incorporated in Alabama and had its principal place of business there, appellant is and has been a resident of Mississippi.

■ The issue of jurisdiction under Alabama's long arm statute is not controlled by state law but rather is a question of federal due process. King & Hatch, Inc. v. Southern Pipe & Supply Co., 5 Cir., 1970, 435 F.2d 43, 44. The "purposeful activity" test of Hanson v. Denckla, 1958, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L.Ed.2d 1283, 1298, is our due process benchmark. See the discussion in Benjamin v. Western Boat Building Corp., 5 Cir., 1973, 472 F.2d 723, 725–727. See also Costin v. Olen, 5 Cir., 1971, 449 F.2d 129. Appellant's purposeful activities in Alabama are sufficient to support jurisdiction. He was president, chairman of the board, and de facto sole stockholder of an Alabama corporation with its principal place of business in Alabama. He alone was authorized to sign all company checks, which were drawn on an Alabama bank. The checks were signed by him in Alabama. He visited Bayou's shipyard in Alabama three or four times weekly and generally dominated its affairs.

■ Appellant does not contest the jury's alter ego finding. The alter ego interrogatory was submitted to the jury as an issue within the confines of Alabama law. See Appelbaum v. First National Bank, 285 Ala. 380, 179 So. 373 (1938); Jefferson County Burial Society v. Cotton, 222 Ala. 578, 133 So. 256 (1930). There was sufficient evidence to support the finding. As stated above, appellant owned or controlled Bayou in toto. He was president and chairman of the board. He shuttled over $200,000 between personal and corporate accounts without accepting promissory notes therefor.[3] The other directors (appellant's daughters) testified that they took no active part in Bayou's operations, and left such responsibilities to appellant. Corporate formalities were seldom adhered to.

■ Despite the jury's alter ego finding, appellant argues that there must be full relitigation of the substantive issues of liability and damages before he can be held for Bayou's debts. Generally speaking, a final judgment is res judicata only between parties to the lawsuit and their privies. Baltimore Steamship Co. v. Phillips, 1927, 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069, 1071; 1 Freeman on Judgments § 407 (1925). Stockholders and officers are not in privity to and are not personally bound by judgments against their corporations. American Range Lines, Inc. v. Commissioner of Internal Revenue, 2 Cir., 1952, 200 F.2d 844. See also Ritchie v. Landau, 2 Cir., 1973, 475 F.2d 151, 155 n. 2. A stockholder may be in privity with his corporation, however, such that a judgment against the latter is res judicata as to the former, if the two are found to be alter egos. Cf. Zenith Radio Corp. v. Hazeltine Research, Inc., 1969, 395 U.S. 100, 108–111, 89 S. Ct. 1562, 23 L.Ed.2d 129, 139–141. In Shamrock Oil and Gas Co. v. Ethridge, D.Colo., 1958, 159 F.Supp. 693, 697, the court stated:

> The effect of applying the alter ego doctrine . . . is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound. . . .

See also International Telephone and Telegraph Corp. v. General Telephone & Electronics Corp., M.D.N.C., 1973, 369

---

3. Appellant loaned Bayou $201,514.30 from 1966 to 1971. Bayou transferred $138,869.-59 in cash and accounts receivable to appellant during the same period, and still owes him $62,644.71.

F.Supp. 316, 329. The jury's alter ego finding below thus leads us to affirm the district court's determination that the Bayou judgment is binding against appellant.

 We reject appellant's claim that appellee's insurer should have been joined as a party plaintiff because of its status as partial subrogee to the cause of action against appellant. Appellant relies upon United States v. Aetna Casualty & Surety Co., 1949, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171. Three of the plaintiffs in *Aetna* were insurers proceeding as partial subrogees and, as to them, the Court stated that the joinder of their respective insureds could be compelled under Rule 19(a) of the Federal Rules of Civil Procedure as the rule then existed.[4] Rule 19(a) as amended in 1966 provides for joinder where there is substantial risk of the defendant being subjected to a multiplicity of suits.[5] *See* Rule 19(a)(2)(ii), F.R.Civ. P. The facts of *Aetna* as to the partial subrogee plaintiffs fit well into this portion of the amended rule. The facts of the instant case, however, where the suit is by the insured (as distinguished from the insurer), and for the full amount of the loss, do not meet the requirements of Rule 19(a).[6] Any multiplicity of suit risk can be obviated by final judgment of the district court at the request of appellant. *Cf.* Braniff Airways, Inc. v. Falkingham, D.Minn., 1957, 20 F.R.D. 141, on the result reached here. *Cf.* Haas v. Jefferson National Bank, 5 Cir., 1971, 442 F.2d 394, on the reasoning to be applied under Rule 19(a)(2)(ii) in

determining when a non-party should be "joined if feasible."

 Finally, we do not view the answers to the interrogatories as being inconsistent, and reject appellant's argument in that regard.

Affirmed.

---

4. Before the 1966 amendments, Rule 19(a) classified parties to be joined, i. e., "persons having a joint interest," as "necessary" or "indispensable." The Court in *Aetna* placed the unjoined insureds in the "necessary party" category, and as a result, viewed their joinder as compulsory. 338 U.S. at 382, 70 S.Ct. at 216, 94 L.Ed. at 186.

5. The rigid classifications of former Rule 19(a) were abandoned in 1966 in favor of a more flexible description of parties for which joinder would be "desirable." Rule 19, F.R.Civ.P., Advisory Comm. Note, 39 F. R.D. 89, 91. Joinder is compulsory only

where the facts fit within one of the Rule 19(a) premises. *Id.* at 91–92. *See generally* Cohn, The New Federal Rules of Civil Procedure, 54 Geo.L.J. 1204, 1204–11 (1966).

6. Public Service Co. of Oklahoma v. Black & Veatch, 10 Cir., 1972, 467 F.2d 1143, as well as treatise writers, are apparently contra in the case of a partial subrogee, but none have reasoned in terms of the 1966 amendment to Rule 19. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1546, at 660, (1971); 3A J. Moore, Federal Practice § 17.09 [2.–4] (2d ed. 1974).