ARKWRIGHT–BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Protection Mutual Insurance Company and Commercial Union Insurance Company, Plaintiffs-Appellants,

v.

The CITY OF NEW YORK, the New York City Transit Authority and Consolidated Edison Company of New York, Inc., Defendants-Appellees.

No. 914, Docket 84–9046.

United States Court of Appeals, Second Circuit.

Argued March 13, 1985.

Decided May 14, 1985.

---

James D. Veach, New York City (Lawrence S. Greengrass, Adam B. Rowland, Rein, Mound & Cotton, New York City, of counsel), for plaintiffs-appellants.

Michael McLoughlin, New York City (Leonard Koerner, Philip Agree, Frederick A.O. Schwarz, Jr., New York City, of counsel), for defendants-appellees.

Before CARDAMONE and PIERCE, Circuit Judges, and METZNER, District Judge.[*]

CARDAMONE, Circuit Judge:

In 1976 the Supreme Court crafted a new exceptional-circumstances test for determining—absent any of the three accepted bases for federal-court abstention—whether federal litigation should be stayed out of deference to parallel litigation commenced in state court. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817–20, 96 S.Ct. 1236, 1246–48, 47 L.Ed.2d 483 (1976). Seven years later in *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court reaffirmed and elaborated on this exceptional-circumstances test. *Id.* at 13–19, 103 S.Ct. at 935–939. The principal issue before us is whether the district court abused its discretion by abstaining from the exercise of its diversity jurisdiction because of exceptional circumstances.

## I

The facts are undisputed and we set them forth briefly. At 1:00 a.m. on Wednesday, August 10, 1983, near the intersection of West 37th Street and Seventh Avenue in New York City's Garment Center, a 12-inch underground water main burst. The City of New York owned and maintained the main, which was located near a tunnel or viaduct belonging to the New York City Transit Authority (Transit Authority). Water flooded an underground substation owned and operated by Consolidated Edison Company of New York (Con Edison). The substation and its transformers caught fire, causing an electric power blackout in the surrounding 12-block area.

Power was not restored until early Saturday, August 13.

Leslie Fay Company (Leslie Fay) and Gimbel Brothers, Inc. (Gimbel), along with thousands of others, occupied buildings in the blacked-out area. Leslie Fay is a New York partnership with its principal place of business in New York City. It manufactures and distributes clothing and maintains sales showrooms in three buildings in the Garment Center. The blackout occurred during the Garment Center's Market Week, when out-of-town buyers were in New York to order their spring lines. Because of the power failure Leslie Fay was forced to close its showrooms. Gimbel is a New York corporation and owns the well-known department store, which is also located in the area affected by the blackout. Plaintiff closed its department store on the Wednesday and Thursday following the power failure. With the use of generators it reopened on Friday, but did only a small portion of its normal business.

Plaintiff Arkwright-Boston Manufacturers Mutual Insurance Company (Arkwright-Boston) is incorporated in Massachusetts and authorized to do business in New York. It provided business interruption insurance for Leslie Fay, which submitted a $764,251 claim for lost business. Arkwright-Boston paid the claim and was subrogated to the full extent of Leslie Fay's loss. Plaintiffs Protection Mutual Insurance Company (Protection Mutual) and Commercial Union Insurance Company (Commercial Union) are incorporated in Illinois and Massachusetts respectively. They are authorized to do business in New York and as co-insurers provided business interruption insurance for Gimbel. Gimbel submitted a claim for its losses which amounted to $424,846. Because the policy had a $100,000 deductible, plaintiffs paid Gimbel $324,846 and became subrogated to Gimbel's rights in that amount. Defendants New York City, the Transit Authority, and Con Edison are all New York entities.

---

[*] Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation.

## II

Arkwright-Boston, Protection Mutual and Commercial Union commenced their respective subrogation actions in the United States District Court for the Southern District of New York (Haight, J.) on August 10, 1984 for damages resulting from the blackout. Arkwright-Boston as Leslie Fay's subrogee sued to recover the sum of $746,251. Protection Mutual and Commercial Union sought to recover the $324,846 that they paid of the $424,846 loss sustained by Gimbel. The claims alleged that the business losses resulted from the three defendants' negligence. The plaintiffs invoked diversity jurisdiction. On the same day that the instant federal litigation was commenced, Gimbel instituted an action in New York Supreme Court against the same three defendants seeking to recover its $100,000 deductible. The federal and state-court complaints contain essentially identical allegations. When the City moved to dismiss the federal suit 15 actions were pending in New York in which various plaintiffs were seeking to recover in excess of one million dollars that they allegedly lost as a result of the blackout. Since the record on appeal was closed, 35 more lawsuits seeking additional damages have been instituted in the New York state courts. In these state actions 12 defendants are named as being responsible, in whole or in part, for the losses arising from the blackout.

In September 1984 defendants Transit Authority and the City moved to dismiss the federal action because of plaintiffs' failure to join Gimbel as an indispensable party, or, alternatively on abstention grounds. Several weeks later plaintiffs served discovery requests on the City. No other proceedings have been taken in this federal action. It appears that little has been done by way of discovery in the state actions either. Some state litigants have moved to assign all of the state actions to one judge. At the time the district court issued its order, that motion was pending before a single New York Supreme Court Justice, who has been designated to supervise all discovery in the blackout litigation. The motion has since been granted. Independently of the state suits, the Comptroller of the City of New York has conducted pre-litigation investigations and hearings with respect to the over 300 claims filed against the City. Such action is required by statute before commencement of a suit against that municipality.

The district court rejected defendants' contention that Gimbel was an indispensable party and, in a well-reasoned opinion, determined also to abstain from the exercise of its diversity jurisdiction. As a result it dismissed plaintiffs' complaint, prompting this appeal. We affirm.

## III

The City and the Transit Authority asserted that Gimbel is an indispensable party, within the meaning of Fed.R.Civ.P. 19(a), to the federal suit instituted by Protection Mutual and Commercial Union. Were Gimbel, as a New York corporation, to be joined as a party plaintiff in the present action against the three New York defendants, the federal court would lose subject matter jurisdiction as there must be complete diversity of citizenship between the parties. Defendants therefore moved to dismiss the action pursuant to Rule 19(b) for plaintiffs' failure to join an indispensable party.

Rule 19(a) provides that an absent party, the joinder of which will not deprive the court of jurisdiction, should be joined if (1) in its absence the court cannot grant complete relief among those already parties, (2) the absent party claims an interest related to the action and is so situated that disposition of the action without that party may impair its ability to protect its interests, or (3) failing to join the absent party subjects parties already in the action to a substantial risk of double liability or otherwise inconsistent obligations. If the case falls within one of these three Rule 19(a) categories and joinder of an absent party would destroy diversity jurisdiction, the trial court must consider whether, under Rule

19(b), the federal action should go forward without the absent party or be dismissed.

■ In a subrogation case the insurer and the insured are "necessary" parties, but clearly they are not indispensable parties. *See United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *Dudley v. Smith*, 504 F.2d 979, 983 (5th Cir.1974). In *Aetna*, the insurers in the four separate cases had made either complete or partial payments for losses caused by the negligence of government employees. Having determined that in partial subrogation both the subrogee and subrogors were real parties in interest, the Court focused on the question of whether "[i]n cases of partial subrogation ... all parties in interest [subrogor and subrogee] must join in the action," *id.*, 338 U.S., at 381, 70 S.Ct. at 215, and concluded that neither party was indispensable. *Id.* at 382 n. 19, 70 S.Ct. at 216, n. 19. In reaching this conclusion the Court relied upon the equitable test set forth in *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1855), which the amended Rule 19(b) sought to codify. *See* Fed.R.Civ.P. 19 advisory committee note (1966 Amendment) (formalistic distinction between "necessary" and "indispensable" parties abolished, and decision of whether to dismiss or proceed made on the practical considerations set forth in the Rule).

■ The district court correctly considered the Rule 19(a) factors and found that there can be complete relief for those already parties to this action without joinder, as the term complete relief refers only "to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." 3A J. Moore, *Moore's Federal Practice* ¶ 19.07–1[1], at 19–96 (2d ed. 1984). Nor will Gimbel's absence impair its ability to protect its interests or prejudice it by subjecting it to the risk of inconsistent judgments in separate forums. Gimbel's state action seeks only its $100,000 deductible, while plaintiffs' federal subrogation suit is for the $324,846 it paid to Gimbel. These two claims are separate and distinct, and

do not constitute unlawful splitting under New York law. When there are separate claims against the party responsible for a loss suffered by an insured and an insurer, there is no unlawful splitting. *See* D. Siegel, *New York Practice* § 220, at 264–65 (1978). The fact that the defendants may be required to defend more than one action arising from the same tort is not grounds for finding the insured an indispensable party to its insurer's partial subrogation action. *See Aetna Casualty*, 338 U.S. at 382, 70 S.Ct. at 216.

As the district court properly found within the exercise of its discretion, *see Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir.1984), that Gimbel was not an indispensable party within the meaning of Rule 19(a), it correctly denied defendants' motion to dismiss under Rule 19(b).

## IV

We next focus on whether the district court properly abstained from exercising jurisdiction. The three accepted categories of exception to the exercise of federal jurisdiction are not here applicable. The facts of this case do not present a constitutional issue that might be mooted by state-court construction of state law, *see Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941). Nor do they involve the restraint of a state criminal proceeding, *Younger v. Harris*, 401 U.S. 37, 43–54, 91 S.Ct. 746, 750–755, 27 L.Ed.2d 669 (1971). Abstention might arguably be grounded on a view that a federal-court decision would disrupt the municipal defendants' efforts to establish a consistent and rational policy in handling the myriad claims against the public fisc. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 317–334, 63 S.Ct. 1098, 1098–1108, 87 L.Ed. 1424 (1943). But the Supreme Court rejected this as a ground for abstention in an analogous setting in *Colorado River*, 424 U.S. at 815–16, 96 S.Ct. at 1245–46.

The Supreme Court found in *Colorado River* that certain exceptional circumstanc-

es will justify federal-court abstention even when the requirements for the three categories of abstention mentioned above are not satisfied. *Colorado River* involved an action brought by the government on behalf of itself and certain Indian tribes to obtain a declaration of water rights in one of Colorado's seven water divisions. The defendants were some 1000 water users who claimed rights in the Division 7 drainage basin. One of these defendants later filed an action in state court seeking to include the government in an ongoing water claims proceeding so that all of the government's claims to water—both state and federal—could be adjudicated in one forum. The district court granted a motion to dismiss the action on abstention grounds. The Tenth Circuit reversed, *United States v. Akin*, 504 F.2d 115 (10th Cir.1974), holding that abstention was inappropriate. The Supreme Court then granted certiorari and reversed the Circuit Court. *Colorado River*, 424 U.S. at 806, 96 S.Ct. at 1240.

■ The Supreme Court reiterated the familiar principle that a federal court has an unswerving duty to exercise jurisdiction over cases properly brought before it. Article III, Section 2 of the Constitution empowers federal courts to exercise jurisdiction in diversity cases; that section states that "[t]he judicial Power shall extend ... to Controversies ... between Citizens of different States." Congress entrusted this power to the district courts by jurisdictional grant, 28 U.S.C. § 1332 (1982). The Court ruled, in *Colorado River*, that a district court may abstain from exercising its authority when a state forum has concurrent jurisdiction, and when "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," counsels such abstention. 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). The *Colorado River* court discussed four factors that the district court should consider when deciding whether to abstain: (1) whether either court has as-

sumed jurisdiction over property; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation, and (4) the order in which the courts obtained jurisdiction. 424 U.S. at 818, 96 S.Ct. at 1246. *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) added a fifth factor: whether federal or state law provides the substantive rule to determine the merits. *Id.* at 667, 98 S.Ct. at 2559 (Blackmun, J., concurring). The Court's recent opinion in *Moses Cone Hospital* further explicated these factors. In a simple contract dispute over the arbitrability of a claim between an owner, a building contractor, and an architect, the Court affirmed the Court of Appeals decision not to stay the federal action. In so doing, it considered the *Colorado River* factors, the federal-law issues involved, and the "probable inadequacy of the state-court proceeding to protect [plaintiffs'] rights." *Moses Cone Hospital*, 460 U.S. at 26, 103 S.Ct. at 942.

■ Before determining that dismissal is warranted because of exceptional circumstances there must be a careful balancing of the applicable factors, with the scale weighted in favor of jurisdiction, *Moses Cone Hospital*, 460 U.S. at 16, 103 S.Ct. at 937, and with the burden of persuasion resting on the party opposing the exercise of federal jurisdiction. The decision "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Id.* at 16, 103 S.Ct. at 937. Whether to abstain is within the sound discretion of the district court. *Giardina v. Fontana*, 733 F.2d 1047, 1053 (2d Cir.1984). With these precepts in mind, analysis of the applicable factors demonstrate the strong reasons for abstention in this case.

The first two factors are not applicable to the present case: the first one because there is no res or property involved; and the second one because, as Judge Haight noted, the state and federal courthouses in New York City are next-door neighbors. The discussion should therefore analyze

the remaining considerations of avoidance of piecemeal litigation, order of jurisdiction, which forum's substantive law governs the merits of the litigation, and the adequacy of the state forum to protect the parties' rights.

As in *Colorado River*, the danger of piecemeal litigation is the paramount consideration in this case. In *Colorado River* the Court relied on Congressional aims, evidenced by the McCarren Amendment, to avoid piecemeal litigation of highly interdependent water rights. By the same token, the instant case involves hundreds of claims and numerous parties, and implicates significant local interests. The state litigation has already been assigned to a single state-court judge. Thus it appears likely that the numerous claims arising out of the blackout will be consolidated for all purposes, including discovery and joint trial, in a single state-court action. If the federal court refuses to abstain, it will force defendants to defend this complex litigation on two fronts. Further, inconsistent disposition of these claims between two concurrent forums would breed additional litigation on assertions of claim and issue preclusion. This could burden the parties for years to come. "[T]he existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 103 S.Ct. 3201, 3214, 77 L.Ed.2d 837 (1983). As the suits all arise out of the single water main failure, they should be tried in one forum. Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort. Plainly, avoidance of piecemeal litigation is best served by leaving these suits in the state court.

The second factor is the order in which jurisdiction was obtained. Decision does not rest on a race to the courthouse. Instead, this factor is considered in a common-sense manner by examining how much progress has been made in each forum. *Moses Cone Hospital*, 460 U.S. at 21–22, 103 S.Ct. at 939–940. Although neither litigation has advanced very far, substantial progress toward initiating common procedures in the state cases has been effected. Hence, it is fair to conclude that the over 40 state cases are further along the path to resolution than the three federal cases.

The third factor is which forum provides the substantive rule to determine the merits. As all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction. The presence of federal-law issues, on the other hand, weighs against surrender. In *Moses Cone Hospital* there were federal-law issues present that supported retaining jurisdiction. Here, there are present only issues of state and local law. Further, unlike the situation in *Giardina v. Fontana*, this is not a "garden variety" federal diversity case applying well-settled state-law principles. 733 F.2d at 1051. Quite the contrary, this case raises serious questions of state law, which include whether a party may recover in tort for a purely economic loss, absent physical injury, *see Beck v. FMC Corp.*, 53 A.D.2d 118, 121, 385 N.Y.S.2d 956 (4th Dep't 1976), *aff'd*, 42 N.Y.2d 1027, 398 N.Y.S.2d 1011, 369 N.E.2d 10 (1977); *Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896 (1928), and the construction of state and municipal building, safety, and fire codes. Thus, this factor also tips the scale toward state resolution of the litigation.

Finally, plaintiffs do not assert that the state-court proceeding would be in any way inadequate to protect their rights. Instead, consolidation in state court could lead to more efficient factfinding and more reasoned decision-making. In fact, if either forum is in a better position to sort out the issues presented by this case, it is the state court, as the case involves exclusively questions of local law.

## V

In sum, analysis of the several factors here applicable inevitably requires a com-

parison of the facts of this case with those of *Colorado River*. Upon weighing the factors it becomes plain that it was not an abuse of discretion for the district court to find that the defendants opposing the exercise of federal jurisdiction had sustained their burden of persuasion. Certainly there are differences between the cases, but the facts of two cases are seldom identical. Moreover, when comparing two cases if a court simply separates the facts and lays them side by side, often it will lose sight of the forest for the trees. Regardless of whether the facts of the instant case are compared individually with those of *Colorado River* or looked at in the aggregate, the result is the same. A distinct likeness to the pattern of *Colorado River* emerges. As a consequence, we are persuaded that this litigation presents those exceptional circumstances where prudent administration of judicial resources and comprehensive disposition of litigation counsels a federal court that has concurrent jurisdiction with a state court to abstain from exercising its jurisdiction. There exists here the requisite "clearest justification" to support the district court's exercise of its discretion.

The order appealed from is accordingly affirmed.