The **AMALGAMATED SUGAR CO., LLC Corp., LN Partnership and NL Acquisition Corp.**, Plaintiffs,

v.

**NL INDUSTRIES, INC., et al.,** Defendants.

No. 86 Civ. 5010 (VLB).

United States District Court, S.D. New York.

March 18, 1987.

Thomas A. Gottschalk, Daniel F. Attridge, and Yosef J. Riemer, Kirkland & Ellis, Washington, D.C., James K. Leader, Townley & Updike, New York City, for plaintiffs.

Irving Malchman, Kaufman Malchman Kaufman & Kirby, New York City, for Richard Rothenberg.

John G. Rainey, Jr., Dorsey & Whitney, New York City, for defendants.

## ORAL DECISION

VINCENT L. BRODERICK, District Judge.

The plaintiffs seek a permanent injunction. They seek to enjoin the prosecution in *Rothenberg v. The Amalgamated Sugar Company*, New Jersey Superior Court, Chancery Division, of the question as to whether the adoption by the board of directors of NL Industries, Inc., of a preferred share purchase rights plan was ultra vires as a matter of New Jersey law.

I have considered, in preparing my disposition of the matter presented, the proceedings before me—the very extensive proceedings before me—in this action last summer. I have considered the briefs, the exhibits and the affidavits that have been submitted in connection with this application and the testimony that was elicited in connection with this application. What I have to say will constitute my findings of fact and my conclusions of law.

On June 25, 1986, The Amalgamated Sugar Company and its affiliates brought an action in this court entitled *Amalgamated Sugar Co. v. NL Industries, Inc.* In that action, they sought a declaratory judgment that the board of directors of NL Industries, Inc., had engaged in ultra vires conduct by adopting a specific preferred share purchase rights plan. The plaintiffs also sought an injunction against the operation of that plan.

A few days later, Amalgamated commenced an all-cash tender offer for shares of NL stock.

NL and 12 of its 13 directors were named as defendants in the action brought by Amalgamated. The defendants vigorously defended the action of the directors in adopting the preferred share purchase rights plan. Over a fairly concentrated period, there was extensive discovery and I held several lengthy arguments and hearings. Those hearings pertained to various motions, and two of them focused directly on the question of the validity or the invalidity of the preferred share purchase rights plan.

I am satisfied that the documents submitted and the hearings which were had developed every detail that was pertinent to resolution of the matter presented.

On August 5, 1986, I preliminarily enjoined the NL preferred share purchase rights plan, holding that it was "An unlawful device," and was "Ultra vires as a matter of New Jersey business corporation law."

I did this by way of an oral opinion which has since been memorialized in 644 F.Supp. 1229 to 1240. I denied motions by NL to stay my ruling pending an appeal and to enjoin Amalgamated from buying stock pursuant to its outstanding tender offer.

On August 6, 1986, Judge Pierce, of the Second Circuit Court of Appeals, denied NL's application for a stay of the preliminary injunction but enjoined Amalgamated from purchasing shares pursuant to its tender offer.

The tender offer expired on August 7, 1986, at 5 p.m. NL sought an injunction to bar Amalgamated from purchasing NL's stock on the open market. By order dated August 8, 1986, Judge Pierce denied the application.

Amalgamated then purchased 14 million shares on the open market. These shares, together with Amalgamated's earlier purchases, put Amalgamated in the position of owning 51% of NL's stock.

Operational control of NL did not pass to Amalgamated at that time. At that stage, NL's 13–member board of directors was intact and was still operating NL. The terms of the members of this board of directors were staggered so that it would be some time—I believe two years—before Amalgamated would be in a position to assert control through a board of directors that contained a majority which Amalgamated had played a role in selecting. None of the members of the NL board as of August 13 was affiliated with Amalgamated. Only one member of that 13–member board was involved with the management of NL; the other 12 members had no affiliation with NL other than their affiliation as directors.

At some stage between August 8 and August 13, various representatives of Amalgamated and NL met to explore the possibility of settling the case. A proposed settlement agreement was developed, and on August 13, 1986, the boards of directors of both NL and Amalgamated voted to approve that settlement agreement. Thus, the settlement was approved by persons who had adverse interests. Although I do not recall any evidence to that effect, it is reasonable to infer no member of the Amalgamated board had any affiliation with NL other than the status of Amalgamated and its affiliates as stockholders. The NL board had no member with any affiliation with Amalgamated.

At this time, 12 of the 13 NL directors were defendants in Amalgamated's action. By the terms of the settlement agreement, nine of the NL directors were to lose their positions on the NL board.

On August 14, 1986, I was advised that the parties had agreed to terminate the litigation before me. By stipulation, the action was dismissed with prejudice as to the 12 directors of NL. Amalgamated moved to convert the outstanding preliminary injunction into a final judgment. I was notified that there was no opposition to this application, and on August 14, 1986, a final judgment was entered which provided:

"1. The preferred share purchase rights plan adopted by the board of directors of NL Industries, Inc., on April 23, 1986, is declared invalid, null and void; and,

"2. Defendant NL Industries, Inc., is permanently enjoined from talking any steps to implement or otherwise utilize the preferred share purchase rights plan adopted by the board of directors of the company on April 23, 1986."

I would note that the settlement agreement between Amalgamated and NL provided that the NL board of directors would remain in charge of the litigation on behalf of NL until it was terminated.

On August 1, 1986, a letter was sent to me by Richard Rothenberg, a NL shareholder, transmitting the draft of a complaint which he planned to file in the state court of New Jersey which would seek, inter alia, a declaratory judgment as to the validity of NL's preferred share purchase rights plan under New Jersey law.

Mr. Rothenberg did not seek to intervene in the proceedings before this court.

On August 6, 1986, which was one day after my decision preliminarily enjoining utilization of the rights plan, Mr. Rothenberg filed an action in New Jersey entitled Rothenberg v. The Amalgamated Sugar Company, et al.

The relief sought in that action included the following: a direction to NL to distribute the preferred rights to shareholders immediately, or, alternatively, awarding those shareholders damages as a result of NL's failure and refusal to distribute those rights to them. He also sought a declaration that the rights were valid under New Jersey law and other relief which was premised upon the validity of the preferred share purchase rights plan.

Amalgamated moved for summary judgment in the Chancery Division of New Jersey Superior Court, asserting that the Rothenberg suit was barred by principles of res judicata and full faith and credit. Judge Levy of that court denied the motion without prejudice.

Amalgamated sought leave to appeal from the Appellate Division of the Superior Court, and leave to appeal was denied.

On March 4, Amalgamated applied to this court for an order to show cause why this court should not enjoin the prosecution of the New Jersey action. The rationale of the application was that the relief sought was necessary to protect and effectuate the final judgment in this action. Amalgamated also sought a temporary restraining order prohibiting further prosecution of the action in New Jersey pending a ruling on the application to this court for injunctive relief.

After hearing the parties, this court issued the order to show cause and granted Amalgamated's application for a temporary restraining order.

Further proceedings were had in this court on March 13, 1987, after which the temporary restraining order was continued and I reserved decision until today.

The application to this court is for a permanent injunction, an injunction which will prohibit Mr. Rothenberg from pursuing in New Jersey an action which puts into question the validity of the preferred share purchase rights plan, which, in my opinion of August 5, 1986, I found to be ultra vires and null and void.

I am satisfied that I have before me now all of the facts which I need to have to determine Amalgamated's application.

Stated briefly, it is Amalgamated's position that the matter of the validity of the preferred share purchase rights plan has been vigorously litigated and definitively decided, and that it should not have to relitigate that issue in another forum. Relitigation will certainly be expensive for both Amalgamated and NL, and, so far as NL is concerned, will involve the expenditure of corporate assets.

Moreover, Amalgamated argues that the pendency of the issue in New Jersey places in limbo various steps which could be taken by NL and by Amalgamated which would be in the interest of each of them: transfers of assets, intercorporate loans, et cetera.

While the New Jersey action pends, according to Amalgamated, the spectre of the preferred share purchase rights plan severely limits any constructive intercorporate plan.

The reason for this hiatus is that the preferred share purchase rights plan, which this court found illegal, contains various punitive provisions which could be triggered by a whole litany of intercorporate transactions, and the springing of that trigger could have the effect, so far as Amalgamated is concerned, of adversely affecting its voting rights and substantially reducing the value of its investment in NL.

It is the position of Mr. Rothenberg that he was not a party to the litigation between NL and Amalgamated and that he cannot be bound by a judgment such as that rendered on a consent basis in this case to which he was not a party.

He argues, moreover, that the settlement itself which resulted in the consent judgment was collusive, since at the time of the settlement Amalgamated was, for all practical purposes, in control of NL.

He further argues that this court had no power to issue the final judgment since there was at that stage no case or controversy.

He further argues that it is now March 18, that his action in New Jersey was filed on August 6 of 1986, and that laches proscribe Amalgamated's application here.

He urges that there is no res judicata effect which could be given to this court's judgment vis-a-vis the New Jersey action since he was not a party to the action in this court.

Moreover, Mr. Rothenberg points to the decision of Judge Levy in New Jersey denying an application by Amalgamated and NL for summary judgment as itself having res judicata effect which will preclude this court from considering Amalgamated's present application.

I am going to deal first with the arguments of Mr. Rothenberg, but I want to note first the impact which the United States Supreme Court opinion of *Parsons v. Steel*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), has on the matter before me.

■ *Parsons v. Steel* would require this court to give res judicata effect to any judgment of the New Jersey court on the subject of the validity of the preferred share purchase rights plan. If, therefore, this court were to deny the application and a decision was made by the New Jersey court that the preferred share purchase rights plan was valid and should be effective, that decision would have res judicata effect.

There are no laches so far as Amalgamated and NL are concerned. In the New Jersey action, they presented this court's opinion and judgment, and they sought from the New Jersey court summary judgment on the basis of res judicata.

Judge Levy denied that application and suggested that the next step would be a motion for summary judgment on the merits. He made it perfectly clear that he was not ruling on the merits and that his ruling, depending on what was presented to him, could be in favor of either party.

After that, and after the application for leave to appeal was denied, Amalgamated came back to this court.

It was entirely appropriate for that initial application to have been made in the New Jersey action. There is a continuing sensitivity in the relationships between federal and state courts, and it was entirely appropriate and in the interest of comity to apply first to the state court for a finding that this court's opinion and judgment had res judicata effect before application was made to this court.

I would note that the evidence before me is to the effect that there has been very little progress in the New Jersey action, aside from the litigation with respect to res judicata and a single discovery request by the plaintiff which has not yet been complied with. It is a very early stage in that litigation.

▮ Judge Levy's denial of the motion for summary judgment was without prejudice. Since Judge Levy made it clear that he still has an open mind on the substantive issue, it is difficult to see what res judicata could attach to it.

▮ I also reject Mr. Rothenberg's argument that at the time of settlement and at the time that the final judgment issued there was no case or controversy or there was collusion.

I have rarely, in 10 years on the bench, seen a matter as vigorously and effectively contested as that of the validity of the preferred share purchase rights plan. I am persuaded that there is no evidence that could have been adduced on that subject which was not presented in the course of the litigation last summer and the significance of which was not fully elucidated.

The settlement came at a time when both sides, plaintiffs and defendants, were looking forward to months and perhaps more of continued expensive and exhaustive litigation. That litigation would, without question, have been a financial drain on all parties, and it would have diverted the attention of plaintiffs and defendants from the business of productively running NL.

There comes in many cases a time when settlement is indicated as the wisest course. Settlement is arrived at through negotiation, and settlement may be and often is directed towards the production of a final judgment, as it was in this case.

Settlement negotiations do not constitute collusion, and a consent judgment, which is produced as a result of those negotiations, is not suspect and, other things being equal, is entitled to full faith and credit.

The settlement agreement itself provided that the NL board of directors would be in control of the litigation on behalf of NL until final judgment.

I find that until the final judgment was signed, there was a case or controversy before me.

Mr. Rothenberg's argument that he was not a party to the prior action is based upon solid fact; he was not a party to that action. I shall discuss the significance or lack of significance of that in a few moments.

▮ I find that there will be irreparable harm so far as Amalgamated is concerned if the relief sought here is not granted. That harm will be (1) the expense of carrying on further litigation with respect to an issue which Amalgamated was justified in thinking had been decided by this court. Those litigation expenses will be considerable, and it is unlikely that a single shareholder owning 100 shares is going to be in a position to compensate for those expenses if that ultimately were to be indicated.

(2) The more substantial harm is, however, the one that I have already reviewed. During the pendency of the New Jersey action, both Amalgamated and NL will be seriously impeded in the conduct of their business affairs with the potential in the future that the preferred share purchase

rights plan might be resurrected. Each company would have to avoid vis-a-vis the other any merger, asset transfer, loan, or tax saving arrangement that would trigger the punitive effects of the preferred share purchase rights plan.

There are, of course, other shareholders in NL besides Amalgamated and Mr. Rothenberg. The evidence before me is that since the final judgment in this action 12.8 million shares of NL common stock and 31 million shares of series C preferred stock have been traded. If the shareholders who sold those shares kept themselves informed, the sales would have taken place with the knowledge that the preferred share purchase rights plan had been enjoined.

Since the preferred share purchase rights plan, if effective, would have made available to those shareholders certain very valuable rights upon the happening of various contingencies, the harm to them if the rights plan were to be resuscitated must also be taken into consideration.

The courts themselves have an interest here, and that is an interest in finality. This court has a burgeoning case load and I suspect the same is true of the court in New Jersey, and it is certainly in the interest of the continued viability of the judicial process that duplicative litigation be avoided.

In seeking to invoke the injunctive powers of this court, plaintiff relies upon 28 U.S.C. Section 1651 and 28 U.S.C. Section 2283.

Section 1651(a) provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Section 2283 provides: "A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

What 1651 means is that in appropriate cases this court may issue a writ.

Section 2283 proscribes injunctions with respect to proceedings in a state court with various exceptions, including an exception for where such an injunction is necessary in aid of a court's jurisdiction or is necessary to protect or effectuate its judgments.

I am asked to apply Section 2283 in this situation on the basis that, in effect, res judicata principles apply, and that the opinion of this court and the final judgment of this court have res judicata effect with respect to the relief which is sought by Mr. Rothenberg in the New Jersey court. (The distinctions between res judicata and collateral estoppel have not been developed in this expedited proceeding before me.)

■ For res judicata to apply to a judgment, there must be a final judgment on the merits; and there must be identical issues in the two actions involved, the action with respect to which res judicata is invoked and the action against which it is invoked. In other words, the issues presented in the second action must necessarily have been raised in the first action.

■ A third requirement is that the party against whom res judicata is asserted in the later action must either have been a party in the prior action or in privity with a party in the prior action, *Kreager v. General Electric Company,* 497 F.2d 468, 471 (2d Cir.), cert denied, 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974); *Zdanok v. Glidden Company,* 327 F.2d 944 at 955, (2d Cir.1963), *cert denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

I shall take up those requirements one-by-one.

First, the requirement that there be a final judgment on the merits:

Final judgment may mean different things in different contexts, and Judge Friendly drove this point home to us in *Lummus Company v. Commonwealth Oil Refining Company,* 297 F.2d 80, 89 (2d Cir.1961) *cert denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

Judge Friendly pointed out that there is "growing disposition to enlarge the scope

of res judicata and to place more regard on the substance of the decision than on the form of the proceedings." He was quoting there from a Kansas Supreme Court decision in *Board of County Commissioners v. McIntosh*, 30 Kan. 234, 238, 1 P. 572, 575 (1883).

Judge Friendly went on to say that "whether a judgment not 'final' in the sense of 28 U.S.C. Section 1291 ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.*

█ My opinion on the validity of the preferred share purchase rights plan was a final opinion. On the basis of that opinion I issued a preliminary injunction. It cannot be suggested, however, that anything further would have been presented in a plenary trial that would have made material or facts available to me that might have caused a redirection or an amplification of that opinion. The opinion was predicated upon a careful analysis of all the information that very competent counsel on both sides over a period of weeks were able to draw to my attention.

On that issue, quite apart from other issues in the litigation before me which were left for another day, there was nothing further that I would have been willing to receive, because, quite simply, I am persuaded that counsel on both sides exhausted their coffers.

The decision was not an "avowedly tentative" one. To the contrary, it was, even though oral, a very carefully structured opinion. The hearings which preceded it and upon which it was based were quite adequate.

The question of the validity of the preferred share purchase rights plan had been at the time of that opinion litigated to such a fare-thee-well that in the words of Judge Friendly, I see "no really good reason for permitting it to be litigated again." 297 F.2d at 89.

█ Now, the second requirement to be considered with respect to res judicata is that the issues to be decided in the second action are identical to those that were necessarily decided in the first action.

The basic issue presented to me last August was that of the validity under New Jersey law of the preferred share purchase rights plan.

The posture in which it was presented was that the plan was in place and had been put in place by the NL directors and the plaintiffs were urging its invalidity under New Jersey law and seeking to enjoin its application.

Mr. Rothenberg, in New Jersey, seeks the same relief. The posture in that action is that Mr. Rothenberg is urging the validity of the preferred share purchase rights plan under New Jersey law and is seeking from the New Jersey court a declaratory judgment as to that plan's legality. In fact, all the relief that Mr. Rothenberg seeks in New Jersey is postulated upon the finding he seeks that the preferred share purchase rights plan is valid.

Thus, the issue before me and the issue in New Jersey are identical ones. Before me, it was decided that the preferred share purchase rights plan is illegal and its employment was enjoined. In New Jersey, Mr. Rothenberg seeks a declaration that the plan is valid, and he seeks relief which is predicated upon a finding of validity.

█ The third res judicata requirement is that the party in the later action against whom res judicata is asserted must be the same party as the party in the prior action, or must be in privity with that same party.

The only difficult part of the problem that has been presented to me is this third requirement. There are cases—and they have been cited to me by the defendant, Mr. Rothenberg—which say that a shareholder is not in privity with his corporation. There are cases—and they have been cited to me by the plaintiff—which say that the

shareholder is in privity with his corporation.

Analysis of these various cases—and I see no reason to cite them right now because counsel know which they are—indicates that neither group is very helpful in resolving the problem before me. Those cases relied upon by plaintiff seem generally to involve shareholders who are in a controlling position in the corporation and who actively participated in the prior litigation. See e.g. *BGW Associates, Inc. v. Valley Broadcasting Co.*, 532 F.Supp. 1115 (S.D.N.Y.1982)

The cases cited by Mr. Rothenberg generally involve claims for damages and refer to the principle that a person who is not party to a litigation will not be held to what happened in that litigation when his own person or property is put at risk in a later litigation. See e.g. *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir.1974), *Ritchie v. Landau*, 475 F.2d 151, 155, n. 2 (2d Cir.1975).

What all of these cases do suggest to me is that inquiry must be made into the precise relationship of the parties to one another and the precise relationship of each of the parties to what is involved in the litigation to which he is a party.

I have found most helpful in this connection a case called *Southwest Airlines Company v. Texas International Airlines*, 546 F.2d 84 (5th Cir.) *cert denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

That case deals with the concept of privity. It also deals with a concept which I have not previously discussed called virtual representation, and it suggests to me that rather than searching through prior cases for one that fits the facts of this case, an analysis of what was before the directors and what is presently before Mr. Rothenberg will be more helpful.

In the prior litigation, the litigation before me, Amalgamated made a frontal attack upon the preferred share purchase rights plan. The defendants, NL, and its directors vigorously defended that plan. They vigorously defended the right of the board of directors elected by the shareholders and charged with the governance of the corporation by the shareholders to adopt that specific plan in what they claimed was the interest of the shareholders.

Certainly, a mere reading of the preferred share purchase rights plan which was in place at that time makes it clear that its purpose was to protect individual shareholders or smaller corporate shareholders against what the board of directors perceived as being possibly overreaching tender offerors.

Every argument that could have been presented to justify the validation of the preferred share purchase rights plan was presented by the defendants in their case. Their activities were certainly directly in the interests of shareholders other than Amalgamated and its affiliates and were intended so to be.

I reach back to what was before me during the course of that earlier litigation to say that the shareholders were kept informed of developments with respect to the preferred share purchase rights plan and of developments in the course of the litigation.

Mr. Rothenberg specifically knew of that litigation and knew of the developments in the course of that litigation. While it was still active, as I have previously noted, he wrote to me with a copy of his proposed complaint in New Jersey.

There is nothing with respect to the preferred share purchase rights plan that Mr. Rothenberg will be able to present in the New Jersey action which was not before me. Moreover, with respect to the validity of the plan itself, his position in the New Jersey action will necessarily be identical to the position that NL and its directors took in the action before me.

If Mr. Rothenberg were to be successful in persuading the court in New Jersey that under New Jersey law the preferred share purchase rights plan that I have found invalid under New Jersey law is valid under New Jersey law, he would be establishing nothing more than the corporation and the directors attempted to establish in the action before me. Without making a finding, therefore, that there is privity in any technical sense between Mr. Rothenberg,

as a shareholder, and the directors of NL, and without making a finding that those directors virtually represented Mr. Rothenberg, I do find that every interest which Mr. Rothenberg could possibly have had in the establishment of the validity of the preferred share purchase rights plan was pressed before me as vigorously as it could be pressed.

I find, further, that Mr. Rothenberg had no interest in the preferred share purchase rights plan which could be presented to the court in New Jersey that was not presented to me by those who sought to uphold the plan before me, to wit, the corporation, NL, and its directors.

Under the circumstance of this case, which is, in my judgment, unique among those that have dealt with this problem, the provisions of Section 2283 have very direct application. A judgment was issued by this court. On the basis of that judgment, two corporations and their shareholders have conducted business for a period of some seven months. There has been a shadow over the conduct of that business by reason of the pendency of the New Jersey action. The pendency of that action is a threat to the effectuation of the judgment which was rendered in this case.

Judge Wisdom, in the Southwest Airlines case, analyzes the importance of the principle of res judicata. He said, "The principle of res judicata serves several policies important to our judicial system. By declaring an end to litigation, the doctrine adds certainty and stability to social institutions. This certainty, in turn, generates public respect for the courts. By preventing relitigation of issues, res judicata conserves judicial time and resources. It also supports several private interests, including avoidance of substantial litigation expenses, protection from harassment or coercion by lawsuit and avoidance of conflicting rights and duties from inconsistent judgments." 546 F.2d at 94.

Now, every one of those policies is involved in the question which is before me, and if relitigation were allowed in this case it would certainly defeat those policies. There would be uncertainty with respect to the operation of the business of two corporations and with respect to the holdings of shareholders in one of those corporations. There would inevitably be a reduction in respect for the courts if an issue once definitively ruled upon was submitted for further judicial consideration. It would certainly continue to waste judicial resources. There would be the expense, which I discussed, of further litigation.

If I could identify a single issue which was peculiar to Mr. Rothenberg or to shareholders in Mr. Rothenberg's position which had not in the course of the presentations before me been fully considered, I might not be as willing as I am to say that this is a case to which the principle of res judicata must be made applicable.

 I grant Amalgamated's application for a permanent injunction enjoining Mr. Rothenberg, his agents, servants, employees and attorneys and those persons in active concert or participation with them from seeking, in *Rothenberg v. Amalgamated Sugar Company,* or in any other action, relief premised upon the asserted validity of NL's preferred share purchase rights plan.